ISADOR BREITBART, RESPONDENT, v. CHARLES C. LU-
RICH, APPELLANT.

Submitted December 11, 1922—Decided March 5, 1923.

On appeal from the District Court to the Supreme Court the judg-
ment under review is to be sustained on factual questions if
there be any evidence to support it.

On appeal from the Supreme Court, in which the following
*per curiam* was filed:

"This is an appeal from a judgment rendered in favor of
the plaintiff below, Isador Breitbart, by the District Court of
the first judicial district of the county of Essex. The defend-
ant below and the appellant, Charles C. Lurich, was a real
estate broker and had for sale properties in the town of
Bloomfield, owned by a Mrs. Wolters. The selling price was
$35,000. Upon a sale $15,000 was required to be paid in cash
and $20,000 in the form of a purchase-money bond and mort-
gage. Breitbart was a storekeeper and a tenant of one of the
properties. Lurich came to him and told him if he could find
a customer on the terms above mentioned he would pay him
for his services $500. Lurich had a contract with the owner
by which he was to receive as commissions three and one-half
per cent. on the first $30,000 and two and one-half per cent.
on the balance of the purchase price. Breitbart obtained two
customers who jointly purchased the property upon the terms
stated. Lurich was paid his commissions by the owner, but
refused to pay Breitbart the $500. Breitbart instituted this
action to recover this sum. There was no denial of the con-
tract by Lurich. He contended, *first,* that there was no
memorandum in writing within the tenth section of the
statute of frauds and perjuries; *second,* that he acted in
making the agreement with Breitbart as the agent of the
owner of the property.

"The first point has been decided adversely to the appellant in the Court of Errors and Appeals in the case of *Feist* v. *Jerolamon*, 81 *N. J. L.* 437, where the court said:

" '*First*. The memorandum is said to be insufficient to comply with the statute since the defendant was not the owner of the lands mentioned therein. That, however, is not fatal to the plaintiff's case. The statute (*Gen. Stat., p.* 1604, § 10) requires a memorandum only in the case of a broker or real estate agent selling or exchanging land for or on account of the owner. If the plaintiff were acting for anyone other than the owner, the case was the ordinary one of contract for services and the statute is inapplicable.'

"The evidence taken at the trial, which is before us, satisfies us that there is no merit in the second contention of the appellant. It was the appellant who approached the plaintiff and asked him to find a customer for the property. The appellant was vitally interested in securing a customer, as otherwise he could not obtain his commissions from the owner. Why should the owner pay commissions to Lurich for effecting a sale of her property and also become responsible to Breitbart for procuring a customer under the agreement made by Lurich with Breitbart? The evidence, in our opinion, fully sustains the judgment of the trial court that the agreement was made by Lurich in his individual capacity and not as the agent of Mrs. Wolters.

"The judgment is affirmed, with costs."

For the appellant, *Otto M. Stiefel.*

For the respondent, *George M. Eichler.*

PER CURIAM.

The judgment under review will be affirmed, for the reasons stated in the *per curiam* of the Supreme Court; except that we call attention to the fact that that court made some observations to show that in the District Court, from which appeal was taken to the Supreme Court, the testimony for the

plaintiff-respondent was more reasonable of belief than that for the defendant-appellant; while it is settled that upon appeal from the District Court that tribunal's judgment should be sustained if there be any evidence to support it; and there was such evidence in this case. See *Duff* v. *Prudential Insurance Co.*, 90 *N. J. L.* 646. Another thing, the Supreme Court observes that a certain amount of the selling price was to be in the form of "a purchase-money bond and mortgage." We know of no purchase-money bond. A bond given for the *payment* of purchase-money may be said, in a sense, to be a purchase-money bond; but it has not the legal significance of a mortgage given to *secure* purchase-money, which is technically known as a *purchase-money mortgage,* in which, as is well known, certain equities inhere.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, BERGEN, KALISCH, WHITE, GARDNER, ACKERSON, VAN BUSKIRK, JJ.    10.

*For reversal*—None.